payments shall be in U.S. Dollars, at the spot rate for the local currency as published in the Wall Street Journal for the last business day of the preceding month.

C(6)   Royalty Adjustments.   The receipt or acceptance by WWE of any royalty statements furnished pursuant to this Agreement or the receipt or acceptance of any royalty payments made, shall not preclude WWE from questioning their accuracy at any time. If any inconsistencies or mistakes are discovered in such statements or payments, appropriate adjustments shall be made immediately by the parties. The Licensee shall pay WWE interest on a late royalty payment at one and one-half percent (1 ½%) per month or eighteen percent (18%) per annum.

C(7)   Method of Payment.   Simultaneous with the submission of each and every royalty statement due during the Term of this Agreement, Licensee will make payment of any and all royalties then due, as required by paragraph 4 of this Agreement, by either (i) a check payable to "WWE" and delivered directly to WWE at the address indicated on page 1 or (ii) by electronic transfer to WWE in accordance with the following instructions:

> IBJ Whitehall & Trust Co.
> One State Street
> New York, NY  10004
> 212-858-2651
> ABA Routing No. 026007825
> Account No. 88775508

Licensee will send WWE by facsimile to (203) 352-8688 or other such fax numbers as directed by WWE, Attention: Royalty, Accounting Manager for WWE copies of all wire transfer confirmations on the day any wire transfer to WWE is made with a copy to the Director of Home Video for WWE via facsimile number (203) 359-5105.

SECTION D.   BOOKS OF ACCOUNT AND OTHER RECORDS; AUDITS

D(1)   Retention of Records.   While this Agreement remains in effect and for two years thereafter, the Licensee shall keep full and accurate books of account and copies of all documents and other material relating to this Agreement at the Licensee's principal office. WWE, by its duly authorized agents and representatives, shall have the right to audit such books, documents, and other material, shall have access thereto during ordinary business hours, and shall be at liberty to make copies of such books, documents, and other material. At WWE's request, the Licensee shall provide an authorized employee to assist in the examination of the Licensee's records. The breach of any aspect of this section shall be and is cause for immediate termination of this Agreement.

D(2)   Audits by WWE.   If any audit of the Licensee's books and records reveals that the Licensee has failed properly to account for and pay royalties owning to WWE, and the amount of any royalties which the Licensee has failed properly to account for and pay for any quarterly accounting period exceeds, by five percent (5%) or more, the royalties actually accounted for and paid to WWE for such period, then Licensee shall, in addition to paying

21

WWE such past due royalties, reimburse WWE for its direct out-of-pocket expenses incurred in conducting such audit, together with interest on the overdue royalty amount at one and one-half percent (1 ½%) per month or eighteen percent (18%) per annum on which such overdue royalty amount should have been paid to WWE. Additionally, at its option, WWE shall have the right to terminate this Agreement immediately.

D(3)   Rights Reserved by WWE. The exercise by WWE, in whole or in part or at any time or times, of the right to audit records and accounts or of any other right herein granted under Section D, the acceptance by WWE of any statement or statements or the receipt and deposit by WWE of any payments tendered by or on behalf of Licensee shall be without prejudice to any rights or remedies of WWE, whether at law, equity or otherwise, and WWE shall not be stopped or prevented from thereafter disputing the accuracy of any such statement or payment.

SECTION E.   TRADEMARK PROTECTION

E(1)   Trademark Uses Inure to WWE's Benefit. Licensee recognizes the exclusive right of WWE to all Intellectual Property and will not use such Intellectual Property in any manner or for any reason except as expressly contemplated by this Agreement. All uses of the Intellectual Property by Licensee will inure to the exclusive benefit of WWE, which will own all rights, including trademark rights, created by such uses of the Intellectual Property, together with the goodwill of the business in connection with which such trademarks are used.

E(2)   Trademark Registrations. WWE will have the exclusive right, but not the obligation, to file at its own expense trademark applications relating to the use or proposed use by Licensee of any of the Intellectual Property in connection with the Licensed Products. Any and all such filings will be made in the name of WWE. Licensee will execute all documents and to perform such other acts as WWE may deem necessary to secure, perfect, or record WWE's or its designee's trademark rights. Licensee and/or its employees, agents, contractors, and representatives will not (a) oppose, petition to cancel, or otherwise contest WWE's trademarks, trademark applications, and/or trademark registrations or (b) challenge WWE's ownership of and/or the validity of WWE's trademarks, trademark applications, and/or trademark registrations. The provisions of Section E(2) will survive any termination or expiration of this Agreement.

E(3)   Records Relative to Trademark Uses. Licensee will keep appropriate records (including copies of pertinent invoices and correspondence) relating to the dates each of the Licensed Products is first placed on sale or sold in each country of the Territory and the dates of first use in each country of each different element of the Intellectual Property on the Licensed Products and Advertising Materials. If requested to do so by WWE, Licensee, at Licensee's cost will supply WWE with samples of the trademark usage in question and other information which will enable WWE to complete and obtain trademark applications or registrations, or to evaluate or oppose any trademark applications, registrations, or uses of other parties. The provisions of Section E(3) will survive any termination or expiration of this Agreement.

E(4) <u>Registered User Laws</u>. As to those countries which require applicants to register Licensee as a registered user of a Trademark or other element of the Intellectual Property used on or in connection with the Licensed Products or which require the recordation of this Agreement, Licensee will execute and deliver to WWE such documents as may be necessary and as are furnished by WWE for such purposes. Failure to do so will be considered a breach of this Agreement.

E(5) <u>Trademark Notices</u>. Licensee will affix or cause its authorized manufacturing sources to affix to the Licensed Products and to the Advertising Materials such trademark notices as specified in Section 13 or as otherwise directed in writing by WWE.

## SECTION F.   COPYRIGHT PROVISIONS

F(1) <u>Copyright Notices</u>. The authorization of WWE to Licensee to make public distribution of the Licensed Products and Advertising Materials is expressly conditioned upon the following agreement of Licensee: Licensee will place on all Licensed Products and on all Advertising Materials the copyright notice or notices in the name of WWE as follows: "©20xx World Wrestling Entertainment, Inc. All Rights Reserved"; or as otherwise directed in writing by WWE.

F(2) <u>Design Work</u>. Licensee acknowledges that all designs of the Licensed Product, including drawings, artwork, sketches, layouts, patterns and material compositions, employed or developed for the production (through CAD/CAM or otherwise) of the Licensed Products, and the codification, recording and reproduction, thereof, however maintained, organized, or derived therefrom including any computer tapes, hard copy of machine readable copies (collectively, the "Specs") are created and developed for the sole benefit of WWE and any and all proprietary interests and ownership rights related thereto belong exclusively to WWE.

F(3) <u>Work For Hire</u>. In order to induce the WWE to enter into this Agreement, Licensee acknowledges that all materials created under this Agreement, including the Specs, (the "Work") were specifically ordered or commissioned by the WWE; that the Work constitutes and will constitute a work-made-for-hire as defined in the United States Copyright Act of 1976; that WWE is and will be the author of the Work and the owner of all rights in and to the Work throughout the universe, in perpetuity and in all languages, for all now known or hereafter existing uses, media and forms, including the copyrights therein and thereto throughout the universe for the initial term and any and all extensions and renewals thereof; and that the WWE will have the right to make such changes therein and such uses thereof as it may deem necessary or desirable. The term "Work" will include any and all material and information created by Licensee in the course of or as a result of the terms and conditions of this Agreement that are fixed in a tangible medium of expression, including without limitation the Specs, Licensed Products, Advertising Materials, notes, drawings, memoranda, correspondence, documents, records, notebooks, flow charts, computer programs, source and object codes, and derivative works, regardless of the medium in which they are fixed.

F(4) <u>Assignment by Licensee</u>. In addition to Section F(3), and to the extent that the Work is not recognized as a "work-made-for-hire," Licensee hereby sells, assigns, and transfers to WWE its entire, worldwide right, title and interest in perpetuity in and to the Work.

23

If parties who are not employees of Licensee (or who are employees of Licensee acting outside the scope of their employment) make or have made any contribution to the creation of the Work so that such parties might be deemed to be "authors" of such Work as the term "author" is used under present or future United States copyright law, or other such applicable laws, then Licensee will obtain from such parties a full assignment of rights so that the foregoing assignment by Licensee vests in WWE full and absolute right and title in the Work free of any claims, interests, or rights of other parties. Licensee will not permit any of its employees to obtain or reserve by oral or written employment agreements any rights as "authors" of any such Work. At WWE's request, Licensee will furnish WWE with any and all information concerning the creation of any Work and with any and all copies of the assignments of rights obtained from the foregoing parties.

F(5)  Copyright Registrations.  WWE will have the exclusive right, but not the obligation, to file at its own expense copyright applications for the Work. Any and all such filings will be made in the name of WWE. Licensee will execute all documents and to perform such other acts as WWE may deem necessary to secure, perfect, or record WWE's or its designee's copyrights. Licensee and/or its employees, agents, contractors, and representatives will not (a) oppose, petition to cancel, or otherwise contest WWE's copyright, copyright applications, and/or copyright registrations or (b) challenge WWE's ownership of and/or the validity of WWE's copyrights, copyright applications, and/or copyright registrations. The provisions of Section F(5) will survive any termination or expiration of this Agreement.

F(6)  Waiver of Moral Rights.  Licensee waives any and all of its moral rights, including but not limited to rights of attribution, paternity, and integrity, arising under any federal or state law of the United States or any law of any other region, country, or subdivision thereof in and to the Work, and any contribution thereto, for any and all past, present, or future uses or purposes now known or hereafter discovered, including without limitation the right to modify said work, ("Moral Rights") in favor of WWE and its predecessors, successors, assigns and licensees or sub-licensees. If other parties, including but not limited to Licensee's employees, agents, and subcontractors, have made any contribution to the creation of the Work so that such parties might be deemed to have Moral Rights under present or future United States law or any law of any other region, country, or subdivision thereof, then Licensee will obtain from such parties a full waiver of any and all of his or her Moral Rights in favor of WWE and its predecessors, successors, assigns and licensees or sub-licensees.

F(7)  Enforcement.  Licensee warrants that the covenants contained in this Agreement are reasonable, that valid considerations have been and will be received therefore and that the agreements set forth in this Agreement are the result of arms-length negotiations between the parties to this Agreement. Licensee recognizes that the provisions of this Section F are vitally important to the continuing welfare of the WWE its members and affiliates and that money damages constitute a totally inadequate remedy for any violation thereof. Accordingly, in the event of any such violation by Licensee, the WWE, its members and affiliates, in addition to any other remedies they may have available to it pursuant to this Agreement or any other agreement, or whether at law or in equity, will have the right to compel specific performance and/or enjoin any action by Licensee in violation of this Section F without necessity for WWE to post a bond or such other security.

SECTION G.   REPRESENTATIONS AND WARRANTIES

G(1)   WWE's Representation and Warranty. WWE hereby represents and warrants that it is a corporation duly incorporated, validly existing and in good standing under the laws of the jurisdiction in which it is incorporated; that it has the full right, power, legal capacity and authority to enter into this Agreement, to carry out the terms hereof and to grant Licensee the rights and privileges granted hereunder. WWE also represents and warrants that WWE is the sole owner of the Intellectual Property and other exploitation rights granted in this Agreement and that such rights shall be unencumbered, unpledged, unattached and neither agreements nor unilateral claims exist which might affect a control over the rights sold and granted to Licensee under this Agreement. Furthermore, WWE warrants that the rights granted herein will not violate or infringe upon the rights of any third persons and/or parties.

G(2)   Licensee's Covenants, Warranty and Representation.

a) Licensee hereby covenants, represents and warrants that it is a corporation duly incorporated, validly existing and in good standing of the laws of the jurisdiction in which it was incorporated; that it has full right, power, legal capacity and authority to enter into this Agreement and to carry out the terms hereof. It is understood and agreed that during the Term of this Agreement, Licensee and WWE, either individually or collectively may be considered the promoter and advertiser of the Licensed Products. In those circumstances, Licensee acknowledges and agrees that on behalf of itself and on behalf of WWE that it shall comply with all federal, state and local laws, rules, regulations and industry standards concerning the manufacture, promotion and advertisement of the Licensed Products and Licensee furthermore agrees not to engage in any unconscionable commercial practice, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression of omission of any material fact in the manufacture, advertising or promotion of the Licensed Products ("Product Compliance). To that end, in addition to the indemnification provisions set forth throughout this Agreement, Licensee agrees to fully indemnify, defend and hold WWE harmless from any and all claims, damages or injuries relating to, in connection with or arising out of Product Compliance for the Licensed Products.

b) Licensee hereby agrees that its covenants, representations, warranties and agreements are of the essence to this Agreement and shall survive the expiration of the Term.

SECTION H.   INDEMNIFICATION; PRODUCT LIABILITY INSURANCE

H(1)   Licensee's Indemnification. Licensee will be solely responsible for and will indemnify, defend and hold WWE and its licensees, successors and assigns, parent corporations, Teams, member corporations, subsidiaries and affiliates and its and their respective officers, directors, members, employees, advertisers, insurers, and representatives (collectively referred to as "Indemnified Persons") harmless from any and all claims, suits, liabilities, judgments, penalties, losses, costs, damages, and expenses resulting therefrom, including reasonable attorneys' fees including an appropriate allocation for in-house counsel and paralegal fees, arising from or by reason of or in connection with the manufacture, distribution, advertising, promotion, offering for sale and sale of the Licensed Products which includes any claims or suits against the Indemnified Persons by reason of (i) any unauthorized

25

use, infringement or alleged infringement of any trademark, service mark, copyright, patent, process, method or device owned or controlled by a third party and exploited by Licensee in connection with the Licensed Product, the Advertising Materials and/or this Agreement; (ii) any defects, alleged defects and/or deficiencies (whether obvious or hidden and whether or not present in any sample approved by WWE) in said Licensed Products or the use thereof, or for any false advertising, fraud or misrepresentations or other claims related to the Licensed Products and/or the Advertising Materials (not involving a claim of right to the Intellectual Property) or in any packaging or other materials relating to the Licensed Products (including Advertising Materials); (iii) any claim that the use of any design or other graphic component of any Licensed Product (other than the Intellectual Property) violates or infringes upon the trademark, copyright or other intellectual property rights (including trade dress) of a third party; (iv) any unauthorized uses of the Licensed Products or Advertising Materials by Licensee; (v) any libel or slander against, or invasion of the right of privacy, publicity or property of, or in violation or misappropriation of any other right of any third party as it relates in any manner whatsoever to the exploitation of Licensee's rights under this Agreement; (vi) any agreements or alleged agreements, whether written or oral, made or entered into by or with Licensee to effectuate the terms of this Agreement, including any employment or consulting agreements entered into by Licensee related in any manner to the exploitation of this Agreement and any such other agreements entered into by Licensee that relates to the manufacture, distribution, exploitation, advertising, sale or use of the Licensed Products by Licensee, its agents and/or representatives; (vii) any Promotions conducted by Licensee related to this Agreement; (viii) any breach or alleged breach of the terms, representations and warranties under this Agreement by Licensee, its subsidiaries, manufacturers, distributors, advertisers or other persons, employees or agents of any of the foregoing; (ix) any act concerning the unconscionable commercial practice, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression of omission of any material fact in the advertising or promotion of the Licensed Products; (x) any act or omission arising out of or related in any manner to this Agreement including Licensee's failure to comply with the terms of paragraph 2 of this Agreement which includes the seizure of any Licensed Products at any WWE Competition within the five (5) mile radius of an Event and/or (xi) any other act under or in violation of this Agreement by Licensee, its subsidiaries, manufacturers, distributors, advertisers or other persons, employee or agents of any of the foregoing.

H(2)   WWE's Indemnification.  To the extent that the Intellectual Property has not been altered, changed or modified in any way, WWE agrees to indemnify and hold the Licensee harmless from any and all claims, suits, liabilities, judgments, penalties, losses, costs, damages, and expenses resulting therefrom, including reasonable attorneys' fee (but excluding lost profits or consequential damages) made by third parties against the Licensee based solely on a claim of right in one or more elements of the Intellectual Property.

H(3)   Claims Procedures.  With respect to any claims falling within the scope of the foregoing indemnification: (a) each party agrees promptly to notify in writing the other of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (b) each party shall have the right to assume, at its sole expense, the defense of a claim or suit made or filed against the other party; (c) each party shall have the right to participate, at its sole expense, in any suit instituted against it and/or to

26

approve any attorneys selected by the other party to defend it, which approval shall not be unreasonably withheld or delayed; and (d) a party assuming the defense of a claim or suit against the other party shall not settle such claim or suit without the prior written approval of the other party, which approval shall not be unreasonably withheld or delayed.

H(4)   Insurance.  The Licensee agrees to obtain and maintain during the Term of this Agreement, at its own expense, a comprehensive general liability insurance policy which shall include coverage for product liability and advertising related claims from an insurance company which maintains an A.M. Best rating of at least A- (A minus) or higher and is acceptable to WWE providing protection (at a minimum, in the amount of Two Million US Dollars (US $2,000,000) per occurrence, Four Million US Dollars (US $4,000,000) annual aggregate) applicable to any claims, liabilities, damages, costs, or expenses, including but not limited to attorneys' fees including an allocation for in-house counsel, arising out of or caused in connection with any defects, alleged defects or deficiencies in the Licensed Products. The insurance policy shall furthermore contain an endorsement that provides insurance coverage for any advertising injury arising out of (i) the misappropriation of advertising ideas; (ii) the failure of the Licensed Products to conform with the advertised quality or performance thereof and/or; (iii) the wrong description of the price of the Licensed Products.  Such insurance shall also include coverage of WWE, its directors, officers, agents, Licensees, insurers, advertisers, assignees, and successors.  Such insurance shall remain in full force and effect at all times during the Term and for a period of two (2) years thereafter.  Within thirty (30) days after execution of this Agreement by WWE and again within thirty (30) days of the policy's renewal date, the Licensee shall cause the insurance company issuing such policy to issue a duplicate original certificate to WWE naming WWE as an additional insured together with evidence of payment in full for the policy, confirming that such policy has been issued and is in full force and effect and provides coverage for WWE as required by this Section H(4). Said insurance policy shall also contain an endorsement that the insurance coverage shall not be reduced, modified or cancelled without Licensee and the insurance company providing thirty (30) days prior written notice to WWE.  In the event that the Licensee's product liability insurance lapses, or if at any time WWE is not covered by insurance in accordance with provisions set forth herein, or if any other provision of this section is breached, WWE shall have the right to immediately terminate this Agreement.

SECTION I.    RESERVATION OF RIGHTS

I(1)   Reservation of Rights.  Except for the specific rights granted to the Licensee under paragraph 2 of this Agreement, all rights in and to the Intellectual Property (including any premium rights related to the Licensed Products) are retained by WWE for its own use and exploitation (including the right to license said rights or portion thereof to third parties for their exploitation). Licensee shall not acquire any rights whatsoever in the Intellectual Property as a result of its use hereunder and all use of the Intellectual Property will inure to WWE's benefit. For the purpose of absolute certainty, it is understood and agreed that WWE reserves the right to use, and to license other parties to use, the Intellectual Property within the Territory for any purpose WWE may determine in its sole discretion.

SECTION J.   INFRINGEMENTS; CLAIMS

J(1)   Representations and Warranties by Licensee.  Licensee represents and warrants to WWE that all designs and products submitted for approval (other than the Intellectual Property) are not subject to any valid patent, copyright, trademark or other proprietary rights of any third party.  It is understood and agreed that WWE shall not be liable (and Licensee shall fully indemnify and hold WWE harmless therefrom) for any activities of Licensee under this Agreement that may infringe or alleged to infringe any patent, copyright, trademark or other proprietary rights belonging to any third party, or for damages or costs involved in any proceeding based upon such infringement or alleged infringement, or for any royalty or obligation incurred by Licensee because of any patent, copyright, trademark or other proprietary interest held by a third party, other than claims based solely upon a right to or in one or more elements of the Intellectual Property.

J(2)   Infringements.  When the Licensee learns that a party is making unauthorized uses of the Intellectual Property, the Licensee agrees promptly to give WWE written notice giving full information with respect to the actions of such party.  The Licensee agrees not to make any demands or claims, bring suit, effect any settlements, or take any other action against such party without the prior written consent of WWE.  The Licensee agrees to cooperate with WWE, in connection with any action taken by WWE to terminate infringements.

J(3)   Claims.  If claims or suits are made against WWE or the Licensee by a party asserting the ownership of rights in a name or design which is the same as or similar to one of the elements of the Intellectual Property, and asserting further that the use of a particular element of the Intellectual Property by the Licensee infringes the rights of such party, or if the parties learn that another party has or claims rights in a trademark, name, design which would or might conflict with the proposed or actual use of an element of the Intellectual Property by the Licensee, WWE and the Licensee agrees in any such case to consult with each other on a suitable course of action.  In no event shall the Licensee have the right, without the prior written consent of WWE, to acknowledge the validity of the claim of such party, to obtain or seek a license from such party, or to take any other action which might impair the ability of WWE to contest the claim of such party if WWE so elects.  The Licensee agrees at the request of WWE to make any and all reasonable modifications requested by WWE in the Licensee's use of the element of the Intellectual Property in question or to discontinue use of such element in the country of the territory in question on the particular Licensed Product or Licensed Products which are involved, if WWE, in its sole discretion, reasonably exercised, determines that such action is necessary or desirable to resolve or settle a claim or suit or eliminate or reduce the threat of a claim or suit by such party.  WWE shall have the right to participate fully at its own expense in the defense of any claim or suit instituted against the Licensee with respect to the use by the Licensee of an element of the Intellectual Property.

SECTION K.   NO SUBLICENSING OF RIGHTS; AGREEMENTS WITH MANUFACTURERS

K(1)   Sublicensing.  The Licensee shall not have the right to sublicense any of the rights granted to it under this Agreement.

K(2)   Agreements with Manufacturers.  For purposes of this Agreement, Licensee is the manufacturer of the Licensed Products.  With the advance written approval of WWE, Licensee may arrange with another party to manufacture the Licensed Products or components of the Licensed Products for exclusive sale, use and distribution by the Licensee.  In that instance, Licensee agrees to enter into a written agreement with all such manufacturers, and agrees to incorporate into such written agreements all of the provisions, for the protection of the rights of WWE, which are contained in the form manufacturer agreement which is available from WWE.  Licensee further agrees to furnish WWE, within thirty (30) days of their execution, copies of all agreements with such manufacturers.  The failure to comply with any aspect of this section is a material breach and WWE shall have the right to immediately terminate this Agreement.

K(3)   Enforcement of Manufacturer Agreements.  The Licensee agrees strictly to enforce against its manufacturers all of the provisions which are required to be included in such agreements for the protection of WWE, as provided in Section K(2), to advise WWE of any violations thereof by manufacturers, and of corrective actions taken by the Licensee and the results thereof; and at the request of WWE to terminate such an agreement with any manufacturer which violates any such provisions; all for the protection of WWE.  If the Licensee fails to exercise such termination rights by giving written notice to the manufacturer within twenty (20) days after being requested to do so in writing by WWE, the Licensee appoints WWE its irrevocable attorney-in-fact to send a notice of termination in the name of the Licensee to the manufacturer for the purpose of terminating the agreement or any specific rights of the party under such agreement.

SECTION L.   BREACH AND TERMINATION

L(1)   Right Of Termination.

a)   Immediate Right of Termination.  In addition to the termination rights stated elsewhere in this Agreement, WWE will have the right to terminate this Agreement immediately by giving written notice to Licensee, in any of the following situations:

i)   Within three (3) months of the execution of this Agreement by WWE, Licensee has failed to take any good faith steps to fully exploit the rights granted to it under this Agreement (for example, failing to submit designs concepts for approval as set forth in Sections A and B above);

ii)   Within six (6) months from the date that this Agreement is executed by WWE, Licensee fails to submit for approval a prototype for each and every item of the Licensed Product as required by Sections A and B;

iii)   Within nine (9) months for from the date of this Agreement, Licensee has failed to begin the bona-fide distribution and sale of the Licensed Products within and throughout the Territory in accordance with this Agreement;

iv)   If Licensee makes, sells, offers for sale, or distributes or uses any Licensed Product or Advertising Material without having the prior written approval of WWE,

29

as required by Section A, or makes any use of the Intellectual Property, if applicable, not authorized under this Agreement at any time thereafter;

    v)    If Licensee fails to deliver to WWE or to maintain full force and effect the insurance referenced to in Section H of this Agreement;

    vi)    If Licensee discontinues its business as it is now conducted;

    vii)    If Licensee fails to deliver any statements or notices referred to in this Agreement (other than any royalty statements which are controlled by Section C) or to give access to the premises and/or licensing records pursuant to the provisions of this Agreement to WWE or WWE's authorized representatives for the purposes permitted under this Agreement;

    viii)    If Licensee exhibits a pattern of repeated failure to make timely delivery of sufficient quantities of the Licensed Products to its customers or retailers that results: (1) in the inability of retailers to meet consumer demand and materially affects the generation of royalties payable to WWE, and/or (2) in an adverse effect to the WWE licensing program; provided, however, that this clause will not be applicable to a failure to make timely delivery that results from a force majeure or an unexpected, unplanned demand, so long as all reasonable efforts are made by Licensee to resume timely delivery as soon as possible;

    ix)    If Licensee knowingly (1) delivers Licensed Products outside the Territory; (2) sells Licensed Products to a third party who Licensee knows delivers or sells the Licensed Products outside the Territory; (3) sells Licensed Products to a third party who Licensee had good and sufficient reason to know delivers the Licensed Products outside the Territory (and provided Licensee does not promptly cease delivery to such third party after it should have reasonably ascertained such party's intent, or after receiving notice of such party's transsshipping); or (4) Licensee improperly distributes the Licensed Products to retailers or distributors outside of the scope of this Agreement as set forth in paragraph 2;

    x)    If Licensee sells to any third party that Licensee knows, or has reason to know, is altering or modifying the Licensed Products prior to sale to the ultimate customer;

    xi)    If any governmental agency or court of competent jurisdiction finds that the Licensed Product(s) are defective in any way, manner or form, including being the subject to any voluntary or involuntary order of any governmental agency (e.g., U.S. Consumer Product Safety Commission) involving the recall of any of the Licensed Products because of safety, health or other hazards or risks to the public;

    xii)    If, other than under Title 11 of the United States Code, Licensee becomes subject to any voluntary or involuntary insolvency, cession, bankruptcy, or similar proceedings, or an assignment for the benefit of creditors is made by Licensee, or an agreement between Licensee and its creditors generally is entered into providing for extension or composition of debt, or a receiver is appointed to administer the assets of Licensee, or the assets of Licensee are liquidated, or any distress, execution, or attachment is levied on such of its manufacturing or other equipment as is used in the production and distribution of the Licensed Products and remains undischarged for a period of thirty (30) days;

xiii) If Licensee discloses any Confidential Information concerning this Agreement, as defined in Section N(15), which, it acknowledges, it may become privy to during the Term of this Agreement; and

xiv) If Licensee fails to comply with Section 7.

b) <u>Right to Terminate upon Five (5) Days Written Notice (one time curable breach only)</u>. If Licensee fails to make any Advance Royalty Payment or Minimum Annual Guarantee payment by the date such payment is required under the provisions of paragraph 4 and/or Section C or if Licensee fails to submit royalty statements and/or any other royalty payments to WWE during the time periods specified in paragraph 4 and/or Section C within five (5) days after receipt of a default notice from WWE, provided however that Licensee will not have the right to cure any subsequent late or overdue royalty payment and/or royalty statement failures under this Section (after the first violation, all subsequent breaches under this Agreement by Licensee shall allow WWE the right to immediately terminate the Agreement);

c) <u>Right to Terminate upon Thirty (30) Days Written Notice (curable breach)</u>. If Licensee breaches any other terms and provisions of this Agreement including any representation, warranty, or agreement made by it under this Agreement, other than those specifically itemized in Sections L(1)(a)) or L(1)(b), and Licensee fails to cure the breach within thirty (30) days after receiving written notice by certified or registered mail from WWE specifying the particulars of the breach, then WWE will have the right to terminate this Agreement by giving written notice to Licensee by registered or certified mail.

d) <u>Licensee's Right to Terminate upon Thirty (30) Days Written Notice</u>. If the agreement that provides Licensee the right to distribute WWE television programs is automatically terminated, Licensee may terminate this Agreement upon thirty (30) days prior written notice to WWE.

L(2)   <u>Assumption and Rejection Pursuant to United States Bankruptcy Code</u>. After any order for relief under the Bankruptcy Code is entered against the Licensee, the Licensee must assume or reject this Agreement within sixty (60) days after the order for relief is entered. If the Licensee does not assume this Agreement within such sixty (60) day period, WWE may, at its sole option, terminate this Agreement immediately by giving written notice to the Licensee, without further liability on the part of WWE.

L(3)   <u>Effect of Termination</u>. Termination of this Agreement under the provisions of this Section L or the provisions set forth elsewhere in this Agreement shall be without prejudice to any rights or claims which WWE may otherwise have against the Licensee. Upon the termination of this Agreement for any reason whatsoever, it is understood and agreed that the following events shall occur immediately: (a) all royalties on sales made by Licensee previous to the date of termination shall become immediately due and payable to WWE and (b) all Minimum Annual Guaranteed Royalty Amounts (as set forth in paragraph 4) outstanding on the date of termination and not yet paid WWE by Licensee hereunder shall become immediately due and payable to WWE. Upon termination of this Agreement under the provisions of Section L(1)(a)(xi) or L(2) of this Agreement, the Licensee, its receivers,

trustees, successors, assignees, or other representatives shall have no right whatsoever to sell, exploit, or in any way deal with the Licensed Products, the Advertising Materials, or the Intellectual Property, except with the special written consent and instructions of WWE.

L(4)   Discontinuance of Use of Intellectual Property, etc.   Subject to the provisions of Section L(5), upon the expiration or earlier termination of this Agreement, the Licensee agrees immediately and permanently to discontinue manufacturing, selling, advertising, distributing, and using the Licensed Products and Advertising Materials; immediately and permanently to discontinue using the Intellectual Property; immediately to destroy any films, molds, dies, CD's, electronic data files, patterns, or similar items from which the Licensed Products and Advertising Materials were made, where any element of the Intellectual Property is an integral part thereof; and immediately to terminate all agreements with manufacturers, distributors, and others which relate to the manufacture, sale, distribution, and use of the Licensed Products.

L(5)   Disposition of Inventory Upon Expiration.   Notwithstanding the provisions of Section L(4), if this Agreement expires in accordance with its terms, and is not terminated for cause by WWE, the provisions of this Section L(5) apply. If Licensee delivers to WWE on or before thirty (30) days prior to the expiration of this Agreement, a written inventory listing, on a Licensed Product-by-Licensed Product basis, all Licensed Products in the Licensee's possession, custody, or control as of the date of such inventory, Licensee shall have the non-exclusive right to sell any Licensed Products listed on such inventory for a period of sixty (60) days immediately following such expiration, subject to the payment of royalties to WWE on any such sales in accordance with the terms of this Agreement. WWE shall have the right (but not the obligation) to buy any or all of the Licensed Products listed on such inventory at the Licensee's cost of manufacture. The sell-off right granted Licensee under this Section L(5) shall in no event apply to a quantity of any Licensed Product exceeding fifty percent (50%) of the Licensee's average quarterly unit sales of such Licensed Product during the one (1) year period immediately preceding the expiration of this Agreement.

L(6)   Equitable Relief.   Licensee acknowledges that WWE is entering into this Agreement not only in consideration of the royalties paid, but also for the promotional value, goodwill and intrinsic benefit resulting from the manufacture, advertisement, distribution, sale and promotion of the Licensed Products by Licensee within the Territory. Licensee further acknowledges that the Intellectual Property, possess a special, unique and extraordinary character that cannot be replaced or the loss thereof adequately compensated for in money damages and that any breach by Licensee of this Agreement will cause irreparable injury and harm to the WWE. Therefore, if it is alleged by the WWE or any third party affiliated with the WWE that (i) Licensee has failed to manufacture, advertise, distribute, market, promote and/or sell the Licensed Products in strict accordance with the terms of this Agreement and/or (ii) Licensee has used the Intellectual Property in an unauthorized manner, as WWE will determine in its sole discretion, then, in each such case, WWE, any third party affiliated with the WWE and/or their assignees (in addition to any other remedies that may be available to them under this Agreement, at law or in equity or pursuant to such other applicable laws) will have the right to obtain from any court having jurisdiction such equitable relief as may be appropriate, including such necessary injunctive relief, without the necessity of posting a bond or other security or proving actual damages. In any suit, action or proceeding brought to obtain such relief, Licensee waives it right, if any, to trial by jury, and, to the maximum extent permitted by

32

applicable law, waive its rights, if any, to interpose any counterclaim or set-off for any cause whatsoever.

SECTION M.   DISPOSAL OF SECONDS

M(1) Disposal of Seconds. If, during the manufacture of the Licensed Products, any seconds (the "Seconds") are produced, Licensee will use its best efforts to dispose of the Seconds as provided in this Section M(1). The provisions of this Section will not apply to any Seconds from which all references to the Licensed Marks are completely and permanently obliterated, which Seconds shall be disposed of as Licensee elects in its sole discretion.

All Seconds (i.e., "functional" Seconds), whether finished goods or piece goods, including all goods and all materials which display the Intellectual Property and artwork utilizing the Licensed Products must be:

(i) destroyed, however destroyed goods shall be accompanied by an affidavit attesting to the destruction; or

(ii) otherwise disposed of by Licensee through the limited WWE approved distribution channels to ensure that such Seconds cannot be offered or sold to the public with the Licensed Marks on the Licensed Products. Prior to any disposal of Seconds Licensee must obtain WWE's prior written consent.

SECTION N. RESTRICTION ON EDITING.

N(1) Restriction to Editing. Licensee shall have the right to distribute the Titles in English, however, Licensee shall not alter, edit or modify (including adding any subtitles or voice overs) the original master or any copies, which shall include changing and/or modify any Title names, without WWE's prior written approval.

SECTION O.   MISCELLANEOUS PROVISION

O(1) Restriction on Assignments. Without the prior written consent of WWE, (which consent may be withheld in WWE's sole discretion) the Licensee shall not, directly or indirectly, assign, sublicense, hypothecate, convey, pledge, encumber or otherwise transfer ("Transfer") any of its rights under this Agreement. For example, should Licensee be a corporation, limited partnership, limited liability company, business trust, general partnership or other business entity then a Transfer which requires the consent of WWE as provided in this Section shall include without limitation (i) any assignment, sale, conveyance, transfer, hypothecation, pledge, encumbrance or other transfer of 50% or more of stock, shares, limited partnership interests, general partnership interests or other equity ownership interests (as appropriate) of Licensee within any consecutive 12 month period, (ii) the sale of all or substantially all of the assets of Licensee, (iii) any merger, consolidation or reorganization into or with the assignor, regardless of whether Licensee is the surviving entity and (iv) any other action or event which would constitute a transfer of the benefits of this Agreement by operation or force of law. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of WWE.

O(2) <u>Independent Contractor Relationship: Parties Not Joint Venturers</u>. At all times the parties hereto shall be considered independent contractors and this Agreement shall not create an agency, partnership or employment relationship between the parties and nothing contained in this Agreement shall be construed so as to make the parties partners or joint venturers or to permit the Licensee to bind WWE to any agreement or purport to act on behalf of WWE in any respect.

O(3) <u>Modifications of Agreement; Remedies</u>. No waiver or modification of any of the terms of this Agreement shall be valid unless in writing, signed by the respective duly authorized representatives of each of the parties. Failure by either party to enforce any rights under this Agreement shall not be construed as a continuing waiver or as a waiver in other instances.

O(4) <u>No waiver of Termination Rights</u>. The waiver, expressed or implied, by WWE of any rights hereunder or WWE's failure to perform or act upon any provision of this Agreement or WWE's breach hereof, will not constitute or be deemed a waiver of any of WWE's rights hereunder and such rights shall be exercisable when it is deemed appropriate by WWE.

O(5) <u>Invalidity Of Separable Provisions</u>. If any provision or clause of this Agreement, or portion thereof, will be held by any court or other tribunal of competent jurisdiction to be illegal, invalid, or unenforceable in such jurisdiction, the remainder of such provision will not thereby be affected and will be given full effect, without regard to the invalid portion. It is the intention of the parties that, if any court construes any provision or clause of this Agreement, or any portion thereof, to be illegal, void or unforceable in such jurisdiction, the remainder of such provision will not thereby be affected and will be given full effect, without regard to the invalid portion. It is intention of the parties that, if any court construes any provision or clause of this Agreement, or any portion thereof, to be illegal, void or unenforceable because of the duration of such provision or the area or matter covered thereby, such court will reduce or modify the duration, area or matter of such provision, and, in its reduced or modified form, such provision will then be enforceable and will be enforced.

O(6) <u>Notices</u>. All notices to be given under this Agreement shall be in writing and shall be delivered either by personal delivery, regular mail, overnight courier, or facsimile (provided that a copy of such notice is also given by mail on the same day) (except as herein otherwise expressly provided) at the respective addresses of the parties as set forth above, unless notification of a change of address is given in writing. Notice given by regular mail shall be deemed given on the date of mailing thereof and notice given by facsimile shall be deemed given on the date of confirmation of receipt of such facsimile (provided a copy of such notice is also sent by regular mail).

O(7) <u>Headings</u>. The paragraph and section headings of this Agreement are inserted only for convenience and shall not be construed as a part of this Agreement.

O(8) <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument.

34

O(9)  Entire Understanding. This Agreement constitutes the entire agreement between the parties respecting the subject matter hereof and supersedes any and all prior agreements or understandings between the parties with respect to the subject matter hereof, whether written or oral.

O(10)  Interpretation. Each party, with the assistance of its respective counsel, has read this agreement and has had an opportunity to negotiate fully the terms of this Agreement. Accordingly, any rule of construction seeking to resolve ambiguities against the drafting party shall not be applicable in the interpretation of this Agreement.

O(11)  No Third Party Beneficiaries. There are no intended third party beneficiaries to this Agreement.

O(12)  Governing Law: The parties agree that this Agreement is made in Connecticut and all disputes, claims, or legal actions arising directly or indirectly out of this Agreement or relating in any way to the subject matter of this Agreement or the parties' relationship, whether sounding in contract, tort or otherwise, shall be governed by the laws of the State of Connecticut, exclusive of the Connecticut laws relating to the conflicts of laws. The parties agree that the provisions contained in this paragraph shall survive the termination and/or expiration of this Agreement.

O(13)  Forum Selection and Jurisdiction: The parties agree that the United States District Court for District of Connecticut and the Judicial District Court of Stamford, Connecticut are the exclusive forums in which a party may bring any dispute, claim or legal action arising directly or indirectly out of this Agreement or in any way related to the subject matter of this Agreement or the parties relationship, whether sounding in contract, tort or otherwise. This provision to submit all disputes, claims, or legal actions to the Federal or State courts in Connecticut shall be specifically enforceable; each party knowingly waives personal service of process and venue; and each party consents to jurisdiction in Connecticut. The parties agree that the provisions contained in this paragraph shall survive the termination and/or expiration of this Agreement.

O(14)  Disclaimer.

a)  Disclaimer. WWE disclaims all warranties of any kind, including the implied warranties of merchantability and fitness for a particular purpose and warranties of title and noninfringement.

b)  Limitation of Liability. WWE will not be liable to Licensee for any indirect, incidental, reliance, special or consequential damages (including but not limited to lost profits or revenue or any expense or cost related to or arising out of any inventory or goods on hand or any expense or cost incurred with regard to the research and development of the Licensed Product) arising out of or related to this agreement, however caused and by any theory (including negligence of any kind or degree) and regardless of whether WWE has been advised of the possibility of such damages and whether such damages were foreseeable. Licensee's sole remedy and only claim for damages shall be the refund of $2,000 per Title not delivered each Contract Year, which shall not include the Specials or Existing Catalogue

Product for which Licensee shall have no remedy and no claim for damages should WWE fail to deliver Titles in either the Specials or Existing Catalogue Product category.

      c) Notwithstanding anything to the contrary herein, Licensee acknowledges and agrees that, in the event it breaches the terms of this Agreement, WWE's available remedies shall not be limited to the non-refundable Advance Royalty Amount set forth in Paragraph 4(a) or the Guaranteed Royalty Amounts set forth in paragraph 4(b) and that WWE shall be entitled to a recovery based on any and all remedies available at law and/or equity, including any additional monetary damages related to or caused by the breach by Licensee.

    O(15) <u>Confidential Information</u>.  (a) During the Term of this Agreement, Licensee may have access to confidential information of the WWE ("Confidential Information"). Confidential Information for the purposes of this Agreement shall be defined to include, but not be limited to, software (regardless of the stage of development), designs, drawings, specifications, models, technical information, unreleased or undisclosed Intellectual Property, hardware, source codes, object codes, documentation diagrams, flow charts, marketing and development plans, business plans, or records, financial information, market reports, customer lists, talent lists, storylines, scripts, story boards or ideas, employee lists, business manuals, policies and procedures, the terms and conditions of this Agreement, billing information and procedures and all other information; provided such information shall be marked "confidential" or "proprietary". The parties agree both during the Term and for a period of five (5) years after the expiration or termination of their of this Agreement for any reason whatsoever to hold each other's Confidential Information in confidence, employing the same degree of care that the party employs for its own proprietary information. The parties agree not to make each other's Confidential Information available in any form to any third party or to use each other's Confidential Information for any purposes other than for the implementation or exploitation of this Agreement.

    b) Notwithstanding the foregoing, the parties' obligations of confidentiality shall not include information which:

      i) at the time of disclosure was in the public domain;

      ii) after such disclosure, becomes generally available to the public other than through any act or omission by the party herein releasing said information; and

      iii) is required to be disclosed by any court of competent jurisdiction, provided that prior written notice of such disclosure is furnished to Licensee in a timely manner in order to afford Licensee an opportunity to seek a protective order against such disclosure and the disclosure is strictly limited to the information which the party is required or compelled to disclose.

    O(16) <u>Binding Effect</u>. The parties represent and warrant that the person executing this Agreement has the authority to bind the party on behalf of which he/she is signing.

O(17) <u>Rules of Construction</u>. As used in this Agreement, unless the context otherwise requires (i) references to "Sections" are to sections of this Agreement; (ii) all "Exhibits" referred to in this Agreement are to Exhibits attached to this Agreement and are incorporated into this Agreement by reference and made a part of this Agreement; (iii) "include", "includes" and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of like import; (iv) the singular includes the plural, (v) the masculine, feminine and neutral genders include the others; and (vi) headings of the various Sections and subsections are for convenience of reference only and will not be given any effect for purposes of interpreting this Agreement. Furthermore, unless specifically stated to the contrary in paragraph 2 of this Agreement, all of the rights and licenses granted to Licensee under this Agreement shall be deemed non-exclusive.

O(18) <u>Force Majeure.</u> If either party is prevented from performing its obligations under this Agreement as a result of a force majeure event, then the non-performing party will not be liable to the other parties for its failure to perform such obligations. As used in this Agreement, force majeure will mean any act of God, fire, flood, war, public disaster, other calamity, strike, or labor difficulties, or any governmental determination, action, regulation, or order, or any other occurrence beyond the reasonable control of the non-performing party, which, despite the non-performing party's reasonable efforts, prevents the performance of its obligations under this Agreement. Licensee will however be responsible for the continued payment of all royalties due WWE as set forth in paragraph 4 above during the force majeure event. Upon the resolution of that force majeure event, Licensee will resume its remaining obligations (i.e. all other obligations other than payment) as set forth in this Agreement and/or proceed as otherwise directed by WWE, in its sole discretion.

O(19) <u>Currency</u>. All currency referred to herein shall be in United States currency.

G:\Department\Legal Affairs\Consumer Products License Agreements\Video License Agreements\BM Korea 2002 2 Final.doc

## GUARANTY

The undersigned ("Guarantor") absolutely and unconditionally guarantees the full and prompt payment of all obligations and liabilities of Licensee under the above Agreement with WWE and the full and prompt performance of any and all agreements, promises, representations and/or warranties of Licensee under this Agreement. The aforementioned guaranty will not be affected in any manner by (and will remain in full force and effect notwithstanding) any amendment or change in any provision of this Agreement of any waiver or forbearance of WWE under this Agreement.

GUARANTOR: _Kyung-Soo Kim_

BY: _[signature]_         Dated: _January 6, 2003_

## SCHEDULE A

Sample Royalty Reports